### EDMONSTON *vs.* McLOUD and others.

S., being in possession of about 28 acres of land, which he held under a contract for the purchase thereof from W., entered into an agreement with M., reciting that M. had purchased the premises, and agreeing that S. should hold and keep possession of the house, and one acre of land, a part of said premises, until M. should pay to S., or his wife in case she survived him, $300, which M. agreed to pay, on taking possession of the house and acre of land. *Held,* that under this agreement M. could not be called upon to pay the $300, until he took possession, and that it was at his election when he would take possession, and that consequently there was no existing indebtedness from M. to S. upon which a creditor of S. could obtain a lien by commencing proceedings supplementary to execution, before a county judge, and obtaining an order for the examination of S. and for a discovery and an injunction.

Edmonston *v.* McLoud.

*Held also,* that M. could not be deprived of his rights, under his contract with S., by an order made in proceedings to which he was not a party; and that consequently, he was not bound by the injunction issued by the county judge, although it was served upon him; inasmuch as it was not directed to him, and he was not a party to it, nor to the proceedings in which it was issued.

It was therefore *held* further, that M. had a right after the commencement of the proceedings before the county judge, to pay the amount due upon his contract with S. and accept a surrender of possession of the premises.

The sections of the code, relative to proceedings supplementary to execution, were intended to be complete, and to afford a judgment creditor instituting proceedings under them the full benefit, and to put him in possession of all the rights, which the chapter embracing them recognizes, creates or regulates. Hence. an action to recover a debt due to the judgment debtor, from a third person, or to reach property in his possession alleged to belong to the judgment debtor, can only be brought by the *receiver* appointed under those provisions of the code. It cannot be instituted by the judgment creditor himself.

THIS was a creditor's action, commenced to recover of the defendant McLoud certain moneys alleged to be due from him to the defendant Cornelius Stiney, the plaintiff being a judgment creditor of said Stiney. The facts were as follows: On the 21st day of November, 1850, the plaintiff recovered judgment in this court against the defendant Cornelius Stiney for $323.06 damages and costs; judgment roll filed and judgment docketed in Ontario county, where the defendants then resided. On the 23d of November in the same year, execution was issued on the judgment, to the sheriff of Ontario county. Nov. 30, same year, the execution was returned by the sheriff of Ontario county wholly unsatisfied. On and for several years previous to the 30th October, 1850, Stiney was in possession of a lot of land in the town of Phelps, Ontario county, of about 23 acres, on which he and his wife lived, which he had purchased of James H. Woods, by contract dated October 14, 1846, whereby he agreed to pay Woods $440 as follows; $50 with interest 1st December next thereafter, $50 with interest 1st May, 1847, and the residue in six equal annual payments, with annual interest; and whereby said Woods agreed, in consideration of said payments being punctually made at the time specified, to convey the said premises to Stiney. This contract contained a provision that neither Stiney, nor any assignee under him, should assign the contract

without the written consent of Woods first obtained. This contract was on the 30th October, 1850, assigned by Stiney to McLoud, and about the same time Woods agreed to convey the premises to McLoud, which was soon afterwards done, on payment by the latter to the former of $262.28, and on the 31st day of October last mentioned an agreement was entered into between the defendants McCloud and C. Stiney, reciting that the former had purchased the premises described in the contract between Stiney and Woods, and agreeing that Stiney should hold and keep possession of the house and one acre of land, a part of said premises, by himself or wife, until McLoud should pay or cause to be paid to Stiney, or his wife in case she survived, the sum of $300, which McLoud agreed to pay on taking possession of the said house and one acre, and thereupon McLoud went into possession of all but the house and one acre. On the 2d day of December, 1850, affidavits were made on behalf of the plaintiff and presented to the county judge of Ontario county, upon which an order was made by him, reciting the judgment, execution and return thereof, in the action of Edmonston against Stiney, and that it appeared to the judge that the defendant had money, choses in action or evidences of debt which ought to be applied towards the payment of said judgment, and requiring the said defendant Stiney to appear before him at &c., on the 6th day of December then instant, at one o'clock P. M. to make answer and discovery on oath concerning his property; and in the mean time and until further order, strictly enjoining and restraining him from receiving, assigning, disposing of, or in any way interfering with, any money, choses in action, evidences of debt or other property, not exempt from execution, belonging to him or in which he was interested. This order was served on the defendant C. Stiney on the 4th day of December, and a copy of it was served on the defendant McLoud on the same day. On the return day of the order Stiney did not appear before the judge, having absconded after the order was served. The judge thereupon issued an attachment against him which has never been served, Stiney having left the state and not having returned. On the 30th of December following,

(1850,) McLoud paid the wife of Stiney (the defendant Nancy Stiney) $60 in money, and executed and delivered to her a deed to her husband for 80 acres of land in Michigan, upon which she indorsed upon the contract between her husband and Mc-Loud of October 31, 1850, a receipt in the following words : " Phelps, Dec. 30. Received on the within contract three hundred dollars in full satisfaction of same, of Hubbert McLoud, and possession of the house and lot is hereby surrendered up to him, and the said contract canceled and satisfied. Nancy Stiney." At the time this receipt was given Mrs. Stiney was in possession of the house and acre of land, and delivered the same up to McLoud, and also gave up to him the counterpart of the agreement. On the same day (Dec. 30) the county judge made another order, reciting the said judgment, execution, and the return thereof, and that it appeared to him that Hubbert McLoud of &c. was indebted to the said Cornelius Stiney in a sum exceeding ten dollars, and requiring the said Hubbert McLoud to appear before him at his office in Canandaigua, on the 2d day of January, 1851, at one P. M. and be examined concerning the same. This order was not served on McLoud until after he had closed the business with Mrs. Stiney and taken her receipt as above ; which was before he knew of the existence of the order. At the return day of the order McLoud appeared before the judge and was examined. On his examination he denied any present indebtedness to Stiney. It did not appear that any further proceedings were had before the county judge, in relation to the matter.

It appeared also that McLoud had paid C. Stiney $9.15 on account of a cow which Stiney had sold a Mrs. Armstrong, and which sum McLoud, being indebted to Mrs. A., had agreed with her to pay to Stiney. This payment was made to Stiney the same day the order of the county judge of the 2d of December was served on him, and after it had been served on both Stiney and McLoud.

The action was tried before a referee, who reported, 1. That the plaintiff became possessed of an equitable lien and was entitled to be paid the two sums of money due to Stiney from

McLoud, (the $300 purchase money, &c., and the $9.15 paid Stiney by McLoud for Mrs. Armstrong,) to be applied on his judgment against said Stiney by McLoud, under the service of the order of December 2, 1850, upon them. 2. That the payments of the said two sums of money by McLoud to Stiney and to his wife, were fraudulent and void as to the plaintiff, and were made with the intent to aid the said Stiney in avoiding the payment of the plaintiff's judgment, and not in pursuance of any agreement made without knowledge or notice of the several facts therein before detailed, and were wholly inoperative to discharge McLoud from his liability to pay the same to the plaintiff on his judgment. That the plaintiff was entitled to judgment that McLoud pay to him the said sums of money, amounting, with interest on the sum of $300 from the 30th December, 1850, to the sum of $353.78, besides his costs and disbursements, to be taxed. The report was dated February 14, 1853. Evidence was given before the referee, showing, as the plaintiff claimed, that the payments by McLoud of the sums mentioned were made with the intent to aid Stiney to avoid payment of the plaintiff's judgment, and were fraudulent and void as to the plaintiff. Judgment was entered upon this report, according to its tenor, with $91.49 costs, from which the defendant McLoud appealed.

*S. V. R. Mallory*, for the appellant.

*J. C. Smith*, for the respondent.

*By the Court*, WELLES, J. · The finding of the referee appears to be founded, in part at least, upon the assumption that the effect of the order of the county judge, of December 2, 1850, was to create an equitable lien in favor of the plaintiff upon a supposed indebtedness of McLoud to Stiney, which lien still continues and may be enforced in this action. That order required Stiney to appear before the judge and make answer and discovery concerning his property, and enjoined him from receiving, &c. any money, choses in action, evidences of debt or other property not exempt from execution, belonging to him.

Edmonston *v.* McLoud.

The order, we think, did not have the operation attributed to it, for several reasons.

1. At the time it was made and served it does not appear that McLoud was indebted to Stiney. There was then, only an open executory contract existing between them, by which McLoud would become entitled to possession of the house and acre of land, upon payment of three hundred dollars. It provided, that Stiney or his wife should keep possession, until McLoud should pay the three hundred dollars, which he agreed to pay on taking possession. It is quite clear that McLoud could not be called upon to pay the $300, until he took possession, and that it was at his election when to take possession.

2. No debt has since been created by McLoud to Stiney. The contract of the 31st of October, 1850, was merged in the transaction of the 30th of December of that year, which was executed and complete, and created no indebtedness either in favor of McLoud or Stiney. McLoud had the right to demand possession of the house and acre of land on payment by him of the $300. He was not restrained from doing this by any order, and was not bound to wait the result of the proceedings against Stiney before the county judge. If the effect of Mrs. Stiney's delivering the possession and receiving the $60, and the deed to her husband for eighty acres of land in Michigan, was to involve Stiney in contempt for disobedience of the injunction order, it is not perceived how it would, therefore, invalidate the transaction as it respected McLoud, or affect his rights in any way. He was not bound by the injunction, though served upon him; because he was not a party to it nor to the proceeding in which it was issued, and it was not directed to him. Its utmost effect upon him was as a notice. If he decided to avail himself of his right to possession of the house, &c. there was no one to whom he could make payment of the $300 but Stiney or some one authorized by him, and this right he could not be deprived of in proceedings to which he was not a party.

3. The case does not show that any further order was ever made against Stiney in the proceedings before the judge, except

that an attachment was issued against him for not appearing, &c. which has never been served. The proceedings against him seem to have been suspended, and new proceedings instituted against McLoud under § 294 of the code, which appear to have ended with his examination on oath, before the judge, without any order having been made in respect to him or his alleged indebtedness to Stiney.

4. But assuming that a lien was created by the order of the county judge of the 2d of December, 1850, how can the plaintiff avail himself of it? Clearly, as it seems to us, not in this action, in any way, but only in the way pointed out in the code. Chapter 2, of art. 9, of part 2 of the code, embracing §§ 292 to 302 inclusive, contains all the provisions on the subject. They are intended to be complete, and to afford a judgment creditor instituting proceedings under them, the full benefit, and to put him in possession of all his rights, which the chapter recognizes, creates or regulates. The provisions were unknown before the code. By § 297, the judge may order any property of the judgment debtor, not exempt from execution, in the hands of himself or any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment, &c. and by § 298, he may also appoint a receiver, &c. Section 299 in effect declares, that no recovery shall be had against a person alleged to be in debt to the judgment debtor, where the indebtedness is denied, except in an action by the receiver. To carry out this provision, it is clear that proceedings must be had, in which the person alleged to be indebted to the judgment debtor is a party, under § 294, in order that he may have an opportunity to deny his indebtedness. The proceeding in this case before the county judge, against McLoud, was not until after he had made the payment and taken full possession of the premises; and it is believed that no one will contend, that after his examination, the judge would have had the power to order him to pay the $300 to the plaintiff, or to make any other order, except for the appointment of a receiver. (*The People, ex rel. Williams,* v. *Hulburt,* 5 *How. Pr. R.* 446.) If a receiver had then been appointed by the judge and an action brought by

Edmonston *v.* McLoud.

him against McLoud, for these moneys, the question whether the payment to Stiney or his wife was a good payment, would have been properly triable in that action.    It would have been in substance a continuation of the proceedings instituted before the judge, or at least the carrying out of those proceedings under the provisions of the code.    But all the proceedings taken before the judge have been practically abandoned, and with the lien, if any ever attached, have fallen to the ground.    This action must therefore be decided the same as if no such proceedings were ever had, excepting that, perhaps, they may be resorted to for the purpose of showing notice of certain facts to the defendant McLoud.

This action was commenced September 30, 1851, just nine months after the payment made by McLoud to Mrs. Stiney, and the giving up of the possession of the house and acre of land, by the latter to the former, by which the transactions between Stiney and McLoud in relation to the land were executed and closed.    What has McLoud done to involve him in the liability to pay the $300 or $9.15 a second time?    At the time he purchased of Stiney the contract with Woods, and entered into the contract with Stiney, respecting the possession of the house, one acre of land, &c. the plaintiff had not obtained his judgment, and McLoud testified, on his examination before the judge, that at that time he did not know of any indebtedness on the part of Stiney to the plaintiff, or that an action had been commenced by the plaintiff against Stiney, and it is not proved that he did then know or had notice of either.

By the latter contract, McLoud became vested with certain rights which have been before considered, and which, as we think the case shows, he has legitimately exercised.    That he had notice, after his contract with Stiney was entered into, of the plaintiff's judgment, and of the wishes and design of the plaintiff to get hold of Stiney's interest in that contract, did not affect his right to settle with, and pay Stiney, unless restrained from doing so, by some legal process.    There is no principle of law or rule of equity which required him to make payment to the plaintiff in preference to Stiney.    There is no pretense for requiring him to pay the plaintiff the $9.15 which he has

already paid to Stiney. It was money which he had agreed with a debtor of Stiney to pay to him. McLoud denies any indebtedness to Stiney, and in no aspect of the case can there be a recovery against him except by action in the name of a receiver, where he can claim as a right a trial by jury.

But we are of the opinion that the case fails to show a right of recovery against McLoud in any view whatever.

The judgment should be reversed, and the complaint dismissed as to McLoud, with costs.

[Monroe General Term, March 5; 1855. *Johnson, Welles* and *T. R. Strong*, Justices.]